IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| PEARL T. GRANT, ) | Civil Action No. 3:10-3004-TLW-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB and SSI on September 18, 2006, alleging disability commencing on August 25, 2006. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). Plaintiff appeared and testified at a hearing held on May 13, 2009. The ALJ issued a decision on July 2, 2009, denying benefits. He found that Plaintiff was not disabled because, under the medical-vocational guidelines promulgated by the Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Plaintiff was 54 years old at the time of the ALJ's decision. She has a high school education and a certified nursing assistant's certificate. Plaintiff has past relevant work as a babysitter/certified

nurse's assistant. Plaintiff alleges disability due to chronic obstructive pulmonary disease, congestive heart failure, diabetes with retinopathy, and obesity. (Tr. 13).

The ALJ found (Tr. 13-18):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since August 25, 2006, the alleged onset date, according to the claimant's earning record and testimony (20 CFR 404.1571 *et seq.,* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease, congestive heart failure, diabetes with retinopathy and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) or to lift/ carry twenty pounds occasionally and ten pounds frequently as well as sit and stand/walk six hours each of an eight-hour workday with no driving.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 9, 1954 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 25, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The Appeals Council denied the request for review in a decision issued September 20, 2010. Tr. 1-3. Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on November 19, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL RECORD

During 2006, Plaintiff was treated at the Charleston Memorial Hospital Emergency Department, the Medical University of South Carolina ("MUSC"), Roper St. Francis Hospital, and Southeast Cardiology for complaints of shortness of breath with hypertension, chest pain, a non-productive cough, and other ailments. See Tr. 161-176, 192-209. Plaintiff was diagnosed with congestive heart failure, a build up of fluid in the air sacs of her lungs (pulmonary edema) causing shortness of breath, hypertension, diabetes, and hyperlipidemia. See, e.g., Tr. 162-168, 171-172,

3

175-176. In March of 2006, cardiac catheterization was performed and no coronary artery disease was shown. An echocardiogram ("ECG"), which was of poor quality, revealed an ejection fraction of forty-four percent.[1] Tr. 162-168. In August of that year, a chest radiograph which was of limited quality due to Plaintiff's weight and lung volumes, revealed worsening of her pulmonary edema. Tr. 161.

In December of 2006, Plaintiff complained of chest pain and shortness of breath at Roper Hospital. Tr. 199-207. Cardiac catheterization revealed normal left and right arteries and an ejection fraction of 55%. Tr. 204. A CT scan of Plaintiff's chest, which was of limited quality due to her weight, showed no obvious blockage in her main lung artery. Tr. 203-204. It was noted that there was no evidence of any blocked blood vessels. She was referred to her cardiologist. Tr. 200. Dr. Sarbabi Masindet, a cardiologist, examined Plaintiff for chest discomfort, shortness of breath and dyspnea on exertion. A stress test revealed reversible interior defect, an ejection fraction of 48%, and no heart wall abnormality. Tr. 208-209. On December 15, 2006, Plaintiff complained of increased chest pain and shortness of breath at Roper Hospital. Tr. 192-198. Dr. Masindet performed another cardiac catheterization which indicated normal coronary arteries, normal left ventricular systolic function, and an ejection fraction of 55%. Tr. 192-198.

In January 2007, Plaintiff was examined by Dr. Daniel Game, a pulmonologist. Dr. Game's examination revealed normal chest expansion; clear lungs; equal breath sounds; normal first and

---

[1]Ejection fraction is:
the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole; it is the stroke volume divided by the end-diastolic volume, often expressed as a percentage. It is normally 65 [plus or minus] 8 percent; lower values indicate ventricular dysfunction.
Dorland's Illustrated Medical Dictionary, 740 (32nd ed. 2012).

4

second heart sounds; and no murmur, gallop, or friction rubs. It was noted that Plaintiff weighed 354 pounds and was morbidly obese. Spirometry showed no ventilatory obstruction, but indicated minimal obstructive airways disease and possible moderately severe restriction. Dr. Game diagnosed Plaintiff with chronic shortness of breath due to morbid obesity, sleep apnea, restless limb syndrome, and mild reactive airway disease. He recommended weight loss, exercise, continued use of her CPAP machine at night, and that she begin taking Clonazepam for restless limbs and Advair for breathing problems. Tr. 261-266.

Plaintiff complained of shortness of breath in March 2007. A CT scan of her chest revealed no artery filling defects; a chest x-ray revealed an enlarged heart with prominence of her pulmonary vessels; and examination revealed an unremarkable-appearing heart without excess fluid (pericardial effusion) and no indication of pulmonary thromboembolism. Tr. 219-234.

On March 29, 2007, State agency physician Dr. Charles T. Fitts reviewed Plaintiff's medical records and opined that Plaintiff could occasionally lift and/or carry twenty pounds; could frequently lift and/or carry ten pounds; could sit, stand and/or walk six hours in an eight-hour work day; had unlimited ability to push and pull; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; could never climb ladders, ropes, or scaffolds; and should avoid exposure to fumes, odors, and gases. He concluded that Plaintiff could perform light work. Tr. 243-250.

On April 25, 2007, Dr. Game noted that Plaintiff's blood oxygen level was normal and she had gained weight. He recommended that she continue use of her CPAP and take Clonazepam and Advair. Tr. 260. He completed a check-the-box questionnaire in which he opined that Plaintiff could frequently lift and/or carry up to five pounds; occasionally lift and/or carry ten pounds; never lift and/or carry more than ten pounds; sit thirty minutes at a time for a total of thirty minutes during

5

an eight-hour day; stand and/or walk fifteen minutes at a time for a total of fifteen minutes during an eight-hour workday; not use her legs or feet to perform repetitive activities; occasionally bend; frequently reach; and never squat, crawl, or climb. He thought she had mild restrictions as to exposure to dust and fumes; and as to exposure to marked changes in temperature and humidity. Dr. Game opined that Plaintiff had moderate chronic pain, moderate depression, mild side effects from her medications, and no cognitive defects. He concluded that Plaintiff could not work. Tr. 251-253.

In May 2007, Plaintiff complained to Dr. Masindet of shortness of breath on exertion. He thought that her symptoms were mainly due to chronic obstructive pulmonary disease and sleep apnea, and recommended she continue with her sleep apnea work up and use of her CPAP machine. Tr. 268. On what appears to be May 14, 2007,[2] Dr. Masindet completed a check-the-box questionnaire regarding Plaintiff's physical limitations, which was nearly identical to Dr. Game's opinion. Tr. 257-259. The same month, a doctor[3] at the Franklin T. Fetter Clinic (where Plaintiff was treated from 2006 to 2009 for high blood pressure, diabetes, and obesity- see Tr. 181-191, 279-302, 442-448) completed a check-the-box questionnaire regarding Plaintiff's physical capabilities and opined that Plaintiff had similar limitations to those noted by Dr. Game and Dr. Masindet, except this physician opined that Plaintiff could never bend, and had moderate restrictions in her exposure to marked changes in temperature and humidity. This doctor also added that Plaintiff had significant medical problems that would make working "impossible." Tr. 254-256.

---

[2]The questionnaire is undated, but the ALJ referred to the form as being completed on May 14, 2007. Tr. 17, see Tr. 257-259.

[3]The signature is illegible. See Tr. 255.

In August 2007, Dr. Game noted that Plaintiff had gained more weight, was using her CPAP machine nightly, and had exertional shortness of breath from severe deconditioning. He recommended she continue using her CPAP machine and lose weight. Tr. 422. In September 2007, Plaintiff underwent gastric bypass surgery at MUSC. See Tr. 325-352, 370-400.

On August 24, 2007, Dr. Mary Lang, another State agency physician, concurred with Dr. Fitts' opinion that Plaintiff could perform a range of light work, except that she found that Plaintiff should avoid exposure to environmental hazards (machinery, heights). She stated that the medical records indicated Plaintiff did not have any severe cardiovascular, respiratory, endocrine, vision, or gastrointestinal problems. Tr. 303-310.

In January 2008, Plaintiff was examined by Dr. Game for the first time since her gastric bypass surgery. Tr. 423. Dr. Game noted that Plaintiff had lost over 80 pounds (from 367 pounds to 286 pounds), and felt well, but still lacked strength. Tr. 423. In January and February 2008, Plaintiff complained to Dr. Masindet regarding chest discomfort and shortness of breath. Examination revealed clear lungs, no wheezes, no rales, normal first and second heart sounds, and no gallop. Tr. 405-406, 407-409. Dr. Masindet noted that both an ECG and a stress test were normal and assessed that there was "no evidence of ischemic heart disease." He recommended that she be reevaluated in six months. Tr. 405-409.

In May 2008 Plaintiff was treated in the emergency room at Roper Hospital for shortness of breath and a non-productive cough. Doctors found no artery blockage, and she was discharged feeling better. Tr. 410-412. On May 21, 2008, Dr. Masindet noted that Plaintiff had clear lungs, no rales, no cackles, no wheezing, and normal heart sounds. He recommended that she continue repeating stress tests. Tr. 403-404.

In June 2008, Dr. Game noted that Plaintiff lost another 40 pounds (down to 242) and that she did not feel generally bad, but still had some shortness of breath with activity. He recommended that she continue to use her CPAP machine and pay attention to essential nutrition. Tr. 424. Dr. Masindet, on June 17, 2008, noted that Plaintiff's cardiac status was stable and her shortness of breath appeared to be due to ischemic heart disease. Tr. 401-402.

In 2007 and 2008, Plaintiff underwent laser treatment for her retinal disorder stemming from diabetes. Tr. 413-421; see also Tr. 212-216, 267, 273-278. On August 5, 2008, despite treatment, she complained of blurry vision, not being able to recognize faces, and not being able to do paperwork. Tr. 419.

On October 16, 2008, Dr. Game noted that Plaintiff had not used her CPAP for three or four months because her breathing was reportedly better after the gastric bypass. She complained, however, about dyspnea on exertion, occasional wheezing, and sleeping for only two hours at a time. Plaintiff's weight was reduced to 228 pounds; her head, ear, nose, and throat were normal; and her lungs were clear. Spirometry testing revealed obstructive airway disease, moderately severe restriction, and increased diffusion. Dr. Game encouraged Plaintiff to use her CPAP. Tr. 425-428.

In January 2009, Plaintiff underwent a stress test which showed inferior ischemia, no wall abnormality, and ejection fraction of 55%. Tr. 433. An ECG showed a dilated left atrium, 3+ mitral regurgitation, normal left ventricular systolic function, and an ejection fraction of 50%. Tr. 434. In February 2009, Plaintiff was treated at Roper Hospital for chest discomfort and shortness of breath. Tr. 429-432, 435-439. Dr. Masindet performed a cardiac catheterization that revealed a high grade lesion (90% mid LAD stenosis), which he stented. Tr. 429. Two weeks later, Dr. Masindet noted

that Plaintiff was doing a lot better, but had shortness of breath on exertion and mild chest discomfort. She was instructed to continue to take Plavix and aspirin. Tr. 440-442.

## **HEARING TESTIMONY**

Plaintiff testified that since quitting work in 2006, she was "just going downhill" physically. She stated she had a constant, sharp, aching pain in her chest that was exacerbated when she swallowed. Tr. 27. Plaintiff said that her diabetes affected her vision, including that she lost 50% of her sight in her right eye, had swelling in both eyes, and her eyes were sensitive to light. Tr. 25-26, 33. Despite being cleared for some type of retinal surgery, she had not yet had the surgery. Tr. 32-33. Plaintiff testified that she had breathing problems during the night (sleep apnea) and during the day when she walked, sat, or stood. Tr. 25-27. She said her prescriptions made her drowsy, fatigued, nauseated, and dizzy. Tr. 26-27. Plaintiff testified that despite having gastric bypass surgery and losing weight she was still in "the same shape" and had "all" the same problems, namely diabetes, heart problems, hypertension, and breathing problems. Tr. 31-32.

Plaintiff testified that during the day she typically slept for at least four or five hours. She mostly stayed at home, praying that her conditions improve, talking on the phone, and waiting for her son to return home so she could talk to him. Tr. 28, 30-31. Plaintiff said she did some chores around the house and was able to take care of herself, but had to take frequent breaks. Tr. 31. She did not think she could do a desk job, because her legs swelled and hurt if she sat too long. Tr. 28-29. Plaintiff estimated she could walk for twenty minutes at a time, and lift five to ten pounds. If she had a job in which she could sit and stand as needed, she thought she could only perform such a job for two to three hours a day. Tr. 30.

**DISCUSSION**

Plaintiff alleges that the ALJ: (1) failed to evaluate the combined effect of her impairments, (2) failed to comply with SSR 96-7p in evaluating her credibility; (3) improperly evaluated opinion evidence; and (4) failed to make the requisite function-by-function analysis in determining her residual functional capacity ("RFC"). The Commissioner contends that the final decision that Plaintiff is not disabled is supported by substantial evidence[4] and free of harmful legal error.

A.   Treating Physician

Plaintiff argues that the ALJ improperly evaluated the opinions of Dr. Game, her treating pulmonologist, and Dr. Masindet, her treating cardiologist. She argues that the ALJ improperly relied on the opinions of the non-examining State consultants. Plaintiff argues that the ALJ failed to explain why the evidence does not support the opinions of her treating physicians. The Commissioner contends that the ALJ reasonably evaluated the medical opinions of record, reasonably discounted Plaintiff's treating physicians' opinions because they were inconsistent with the rest of the medical evidence, and gave good reasons for his decision.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and

---

[4]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

In his decision, the ALJ merely stated that he gave little weight to the opinions of Plaintiff's treating cardiologist and pulmonologist because these opinions were not supported by the weight of the medical evidence or these treating physicians' medical notes which indicated that Plaintiff's condition was stable with treatment. Tr. 17. The decision, however, lacks detail sufficient to determine whether the determination to discount these opinions is supported by substantial evidence. Further, in discounting these opinions, the ALJ appears to have discounted objective medical evidence that Plaintiff had a reduced ejection fraction as shown by catheterizations and ECGs, and minimal obstructive airways disease and moderately severe restriction as shown by spirometry

11

testing in January 2007 and October 2008. Tr. 266, 428. Dr. Masindet indicated that Plaintiff had shortness of breath which appeared to be due to ischemic heart disease. Tr. 401-402. Further, although the opinion has an illegible signature, the opinion from the treating source at the Fetter Clinic also supports the opinions of Plaintiff's treating cardiologist and pulmonologist.

### B. Credibility/Subjective Complaints

Plaintiff argues that the ALJ erred by failing to properly evaluate her subjective complaints of pain by discounting her credibility solely on the medical record. The Commissioner contends that the "ALJ reasonably found Plaintiff's subjective complaints of disabling pain to be incredible." Specifically, the Commissioner argues that the ALJ correctly found that Plaintiff's testimony was not credible because her subjective symptoms (constant chest pain, heart/breathing problems, sleep apnea, right eye vision loss with swelling, insulin-dependent diabetes, sleep difficulty, fatigue, swallowing difficulties, and hypertension) were not supported by the medical evidence including objective testing, and her testimony was inconsistent with medical evidence and earlier statements to her doctors.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the

impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Here, review of the ALJ's decision indicates that he impermissibly discounted Plaintiff's credibility solely because he found that her pain and other subjective complaints were not substantiated by objective medical evidence. Tr. 15-16. The Commissioner appears to argue that the ALJ could permissibly discount Plaintiff's credibility because her testimony that she was still in the same shape and had the same problems (hypertension, diabetes, heart problems, and breathing problems) since gastric bypass surgery (Tr. 31-32), was not supported by the fact that she lost over 100 pounds following surgery and on occasions was noted to be doing better. This, however, was not discussed by the ALJ in his decision. Further, although Plaintiff may have experienced some improvement after her weight loss, she continued to have heart and lung problems, as evidenced by objective testing indicating minimal obstructive airway disease (Tr. 428) in October 2008, inferior ischemia in January 2009 (Tr. 434), and the need for stent placement in February 2009 (Tr. 429). Dr. Game continued to note that Plaintiff had sleep apnea, cardiac disease, hypertension, and diabetes in October 2008. Tr. 425. Treatment notes from the Fetter Family Health Center in January 2009 indicate that she continued to complain of nausea and being light headed, she had recent high blood sugars, and she continued to have to take medications for hypertension (Norvasc, Accupril) and diabetes (Novalog 70/30). Tr. 446. Additionally, although the ALJ noted that Plaintiff complained of medication side effects (Tr. 15), he did not address these in his decision. See 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which

[claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

C. RFC/Combination of Impairments

Plaintiff argues that the ALJ erred by failing to evaluate the combined effect of her multiple impairments and to make the requisite function-by-function analysis in determining her RFC. The Commissioner argues that the ALJ engaged in a legally sufficient analysis of Plaintiff's RFC. Additionally, the Commissioner argues that the ALJ sufficiently considered Plaintiff's combination of impairments by discussing and considering all of her impairments, including those which were not severe, and finding that her combination of impairments did not meet or equal one of the listings of impairments.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

In evaluating a claim for disability insurance benefits, the Commissioner is required to consider the combined effects of a claimant's impairments, and he must adequately explain his evaluation of the combined effect of those impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989); Reichenbach v. Heckler, 808 F.2d 309, 312 (4th

Cir. 1985). These factors are mandated by Congress' requirement that the Commissioner consider the combined effect of an individual's impairments, 42 U.S.C. § 423(d)(2)(B), and the general requirement by the courts that an ALJ explicitly indicate the weight given to all relevant evidence. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); see also Hines, 872 F.2d at 59.

Here, the ALJ does not appear to have properly evaluated Plaintiff's RFC and considered her combination of impairments as the ALJ does not appear to have fully considered all of the evidence as noted above. Additionally, the ALJ does not appear to have properly evaluated Plaintiff's obesity. Although Plaintiff had gastric bypass surgery and lost a significant amount of weight, she was morbidly obese from the time of her alleged onset date (August 2006) until some time after the September 2007 surgery and still weighed 229 pounds and was noted to be obese in March 2009. Tr. 447.[5] The ALJ also does not appear to have considered all of the evidence concerning Plaintiff's visual impairments. Although Plaintiff underwent laser procedures to treat her diabetic retinopathy, she continued to complain to her ophthalmologist about vision problems in August 2008. Tr. 219. As noted above, the ALJ's decision concerning Plaintiff's credibility is not supported by substantial evidence. Thus, it is unclear whether the ALJ properly considered all of Plaintiff's credible subjective complaints in determining Plaintiff's RFC. Additionally, although the ALJ stated that he assigned significant evidentiary weight to opinions of the State agency physicians (Tr. 16), it is

---

[5] Pursuant to SSR 02-1p, the ALJ must consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from performing her past relevant work or other work in the national economy. When assessing a claimant's residual functional capacity ("RFC"), the ALJ is to consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p.

15

unclear why their postural and environmental limitations were not included in Plaintiff's RFC (Tr. 14).

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to properly evaluate the opinions of Plaintiff's treating physicians, evaluate Plaintiff's credibility in light of all of the evidence, and consider all of Plaintiff's impairments (including in combination).

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

February 21, 2012
Columbia, South Carolina